Filed 3/7/24  Acosta v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| JULIO ANGEL ACOSTA, | |
| Petitioner, | E083326 |
| v. | (Super.Ct.Nos. FSB23002726, FSB23004353) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | |
| Respondent; | OPINION |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Sarah Oliver, Judge.  Petition granted.

Civil Rights Corps and Katherine Hubbard, Carson White, and Salil Dudani, for Petitioner.

No appearance for Respondent.

1

Jason Anderson, District Attorney, and Brent J. Schultze, Deputy District Attorney, for Real Party in Interest.

INTRODUCTION

Petitioner filed a petition for writ of habeas corpus to compel his release without bail pending based on the trial court's failure to satisfy the standard required by the California Supreme Court as articulated in *In re Humphrey* (2021) 11 Cal.5th 135, 152-154 (*Humphrey II*). This court construed the filing as a petition for writ of mandate[1] and invited respondent and real party in interest to respond. The People filed a response arguing this court should interpret the trial court's findings as implied and deny the petition. We disagree, and therefore grant the petition and issue a peremptory writ in the first instance directing the superior court to vacate its order setting petitioner's bail at $30,000 in case No. FSB23002726 and $30,000 in case No. FSB23004353 and hold a new hearing at which it considers petitioner's motion for bail reduction in a manner that is consistent with *Humphrey II*.

FACTUAL AND PROCEDURAL HISTORY

On August 13, 2023, petitioner was arrested for being a felon in possession of a firearm. He was arraigned two days later, and his bail was initially set at $30,000. On August 22, 2023, the court held a bail hearing and released petitioner on his own

---

[1] In their response, the People argue that Penal Code section 1490 requires the petition to be treated as a habeas petition. However, Penal Code section 1490 is not an exclusive remedy. As this court noted in *Yedinak v. Superior Court* (2023) 92 Cal.App.5th 876, a writ of mandate is also appropriate where, as here, the issue is purely legal in nature. (*Id*. at p. 883, fn. 2.)

recognizance. The terms and conditions of petitioner's release ordered him to obey all laws and not possess any deadly or dangerous weapons. On December 28, 2023, petitioner was rearrested after he was contacted by the police while sitting on a stolen scooter. On January 2, 2024, petitioner was arraigned on a single felony count of possession of a stolen vehicle, and the court set his bail at $280,000 in that case. It also reset bail at $30,000 for the felon in possession of a firearm case. Petitioner did not post bail and remains in custody.

On January 16, 2024, the trial court held preliminary hearings on both cases. After holding petitioner over on all charges, the court heard arguments as to bail. Petitioner argued that he is transient and unable to afford any monetary bail, as demonstrated by the facts of the crimes themselves and the trial court's appointment of the public defender to represent him. Petitioner also argued that he did not present a danger to the public as the charged crimes were non-violent in nature. Petitioner contended that his voluntary appearance at a prior court date while he was released on his own recognizance showed his willingness to return to court. Petitioner requested the court consider less restrictive alternatives such as mandatory reporting to a probation officer, Narcotics Anonymous meetings, and "GPS monitoring." In response, the trial court expressed concern that petitioner had been released on his own recognizance while his first case was pending and then was subsequently rearrested on a new felony case. The trial court questioned what assurance the court would have that petitioner would comply with future court orders if he was released. Petitioner reiterated there were less

3

restrictive conditions than cash bail that had not yet been imposed, so petitioner should be released without bail.

Following argument from the People, the trial court declined to release petitioner on his own recognizance, stating, "He was pending a felony charge when he picked up a second felony and the first one, a felony possession of a firearm, is very concerning to the Court. [¶] The Court will, however, reduce the bail amount as the defendant's indicated an inability to pay." The trial court then lowered bail to the scheduled amount of $30,000 for possession of a stolen vehicle and left bail at $30,000 in the felon in possession of a firearm case. Petitioner now files the instant petition.

## STANDARD OF REVIEW

A trial court's decision on bail is reviewed for abuse of discretion. (*In re White* (2020) 9 Cal.5th 455, 469.) We review the trial court's factual findings as they relate to bail for substantial evidence and any legal conclusions are reviewed de novo. (*Id.* at p. 470.)

## DISCUSSION

In setting bail, the trial court must first determine whether the defendant is a flight risk or a danger to public or victim safety. If the trial court determines the defendant is a flight risk or a danger, then the court should consider whether "nonfinancial conditions of release may reasonably protect the public and the victim or reasonably assure the [defendant's] presence at trial." (*Humphrey II*, *supra*, 11 Cal.5th at p. 154.) However, "[i]n those cases where the arrestee poses little or no risk of flight or harm to others, the

4

court may offer OR release with appropriate conditions." (*Ibid.*) "If the court concludes that money bail is reasonably necessary, then the court must consider the individual arrestee's ability to pay, along with the seriousness of the charged offense and the arrestee's criminal record, and—unless there is a valid basis for detention—set bail at a level the arrestee can reasonably afford." (*Ibid.*) It is the court's "obligation to set forth the reasons for its decision on the record and to include them in the court's minutes." (*Id.* at p. 155.)

Here it is unclear from the transcripts whether the trial court found petitioner to be a flight risk or a danger to public or victim safety. During the hearing, the People argued that petitioner's gun possession charge was a serious crime, and his prior record included domestic violence, a violent felony, making petitioner a danger to the public. The People also noted that petitioner had failed to appear in the past. However, the court made no mention of petitioner being a flight risk and made no specific findings that petitioner was a danger to the public, aside from its comment that the gun possession was "very concerning to the Court."

The People invite this court to consider the trial court's findings as implied and find them sufficient under *Humphrey II*. However, "[e]xplicit judicial findings 'serve several worthy purposes: They help to assure a realistic review by providing a method of evaluating a judge's decision or order; they guard against careless decision making by encouraging the trial judge to express the grounds for his decision; and they preserve public confidence in the fairness of the judicial process.' " (*In re Humphrey* (2018) 19

Cal.App.5th 1006, 1038 (*Humphrey I*), quoting *In re John H.* (1978) 21 Cal.3d 18, 23.)

The court in *Humphrey I* explained its concerns with implicit findings by stating, "[t]he court's failure to explain the reasoning behind this incongruous order makes it impossible for us to know whether the trial court's determinations that petitioner was dangerous and presented a flight risk were based upon an individualized evaluation of his circumstances and propensities or solely upon 'the generalizations of future criminality . . . .' " (*Id.* at p. 1040.) This court is faced with a similar challenge as the record leaves us to assume or guess at the trial court's reasoning and holding as to whether it found petitioner posed a flight risk or danger to the public.

If the court found petitioner to be a danger, the court then needed to consider whether nonfinancial conditions could reasonably protect the public. The transcript of the proceeding is silent on the trial court's consideration of nonfinancial conditions (including those explicitly proposed by petitioner). It is possible the trial court considered nonfinancial conditions, however, if the trial court considered them, at minimum, it did not explicitly articulate those considerations on the record as required. (*Humphrey II*, *supra*, 11 Cal.5th at pp. 155-156.)

Finally, the bail hearing transcripts do not reveal that the court made sufficient inquiry into petitioner's ability to pay to support a finding that he could reasonably afford the set bail amount. The only evidence in the record regarding petitioner's financial status was his own contention that he was transient and indigent. Without inquiry by the court to establish that petitioner had access to funds sufficient to post a bond for bail,

either from his own resources or from the financial support of others, the record would not support a finding that petitioner was able to post bail.

The People argue the burden rests on petitioner to establish an inability to pay, however, as articulated in *Humphrey I*, "the trial court erred in *failing to inquire* into petitioner's financial circumstances and less restrictive alternatives to money bail." (*Humphrey I*, *supra*, 19 Cal.App.5th at p. 1016, italics added.) The court in *Humphrey II* also frames the requirement as an inquiry. (*Humphrey II*, *supra*, 11 Cal.5th at p. 148 ["At no point did the court inquire into Humphrey's ability to pay such an amount"].) As such, the People's argument placing the burden on petitioner is misplaced, especially where, as here, petitioner asserted his indigency status, invited the court to inquire further if it felt necessary, and the trial court did not further inquire.

Although we express no opinion as to whether petitioner was properly held on bail, for the reasons discussed above, we find a new bail hearing must be held to allow the court to expressly state the reasons for its ruling.

## DISPOSITION

Let a peremptory writ of mandate issue, directing the respondent superior court to vacate its bail setting order of January 16, 2024, and hold a new hearing at which it considers petitioner's motion for bail reduction in a manner that is consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

Acting P. J.

We concur:

RAPHAEL

J.

MENETREZ

J.